UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES ANTHONY CARTER JR.,

                        Plaintiff,

        -against-

AKINOLA AKINYOMBO AND KATIE
NGBODI.,

                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/10/2025

No. 21-CV-00872 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff James Carter Anthony Jr. ("Plaintiff") commenced this *pro se* action on January 29, 2021, pursuant to 42 U.S.C. § 1983. (ECF No. 2.) This is the Fifth Amended Complaint and Plaintiff is now represented by counsel. Plaintiff asserts claims against Akinola Akinyombo, Deputy Superintendent for Health Services at Fishkill Correctional Facility, and Nurse Katie Ngbodi (collectively, the "Defendants") in their official and individual capacities alleging First and Eight Amendment violations.[1] (*See generally* Fifth Amended Complaint, "5AC.") Defendants are employees of the New York State Department of Corrections and Community Supervision ("DOCCS").

Defendants seek to dismiss the 5AC pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 102.) For the following reasons, Defendants' motion to dismiss is DENIED.

**BACKGROUND**

The following facts are drawn from Plaintiff's 5AC (ECF No. 90) and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**I.    Plaintiff's Incarceration at Bare Hill**

---

[1] On January 30, 2025, Plaintiff voluntarily dismissed all claims against Defendant Mulvihill. (ECF No. 98.) The Court therefore dismisses all claims against Defendant Mulvihill with prejudice.

1

Plaintiff was initially incarcerated at Bare Hill Correctional Facility in Malone, NY ("Bare Hill"). (5AC ¶ 1.) While incarcerated, Plaintiff was issued a medical pass by a DOCCS nurse, which authorized Plaintiff use of a cane for both medical and physical reasons. (*Id.* ¶ 2.) Plaintiff was granted this medical pass because he suffered from several hip conditions. (*Id.* ¶ 1.) The medical pass mandated that Plaintiff be housed in a unit that gave him access to meals and medical services without physical restrictions, such as climbing stairs, navigating hills, or walking longer than ten minutes. (*Id.*)

In March 2018, Plaintiff alleges that he was physically assaulted twice by Bare Hill officials. (*Id.* ¶ 7.) According to Plaintiff, the Bare Hill officials were aware of Plaintiff's hip condition and deliberately hit him in his lower back and hip. (*Id.*) The assault left Plaintiff in "extreme pain, badly bruised, and unable to walk." (*Id.*) After the assault, Plaintiff sought medical attention for his injuries and was told by a Bare Hill nurse that "everything looked fine" despite not receiving an examination. (*Id.* ¶ 8.) Plaintiff "[further] complained that his medical needs were being ignored." (*Id.* ¶ 9.) As a result, a prison official threatened Plaintiff that there would be consequences if he told anyone about the incident. (*Id.*) Nonetheless, Plaintiff reported his mistreatment and informed his mother and sister about the beatings, threats, and verbal abuse. (*Id.* ¶ 10.) Plaintiff's sister then contacted an official in Albany "begg[ing]" for her brother to be moved to a facility closer to New York City. (*Id.*) Her requests were answered, and on or about May 18, 2018, Plaintiff was transferred to Fishkill Correctional Facility ("Fishkill") in Beacon, NY. (*Id.*)

## II.   Plaintiff's Incarceration at Fishkill

While at Fishkill, Plaintiff remained reliant on his cane and continued to seek medical treatment for his pain. (*Id.* ¶ 12.) Because of his pain and limited mobility, Plaintiff often skipped lunch and dinner because he had difficulty getting to the mess hall in time for meals. (*Id.*) On or

about June 15, 2018, Plaintiff wrote to the Inmate Grievance Resolution Committee ("IGRC") "requesting a thicker or second mattress for his bed" because "he was unable to sleep through the night due to the pain." (*Id.* ¶ 47.) Defendant Akinyombo responded to Plaintiff stating the mattress was "standard for all inmates and he should contact the prison clinic for assistance with pain management." (*Id.* ¶ 48.)

On or about July 1, 2018, Plaintiff was treated by Dr. Frederick Bernstein, a Fishkill physician. (*Id.* ¶ 49.) Dr. Bernstein reviewed Plaintiff's bloodwork, which showed low levels of hemoglobin—an indicator of anemia. (*Id.* ¶ 50.) However, Dr. Bernstein did not inform Plaintiff that he was anemic. (*Id.*) After reviewing Plaintiff's x-ray, Dr. Bernstein diagnosed Plaintiff with severe degenerative osteoarthritis in his left hip and moderate degenerative osteoarthritis in his right hip. (*Id.*) He informed Plaintiff that the "only way to stop the chronic and debilitating pain was to replace his left hip." (*Id.* ¶ 13.) In the meantime, Dr. Bernstein prescribed Tylenol for short-term pain management. (*Id.* ¶ 51.)

On or about September 3, 2018, Defendant Ngbodi reviewed Plaintiff's medical records and "knew that he had been diagnosed with anemia," but "never prescribed medication to improve his anemic condition" or took any further steps to address it. (*Id.* ¶ 16.) Additionally, despite telling Plaintiff that "she would place a request for a consultation," she never did. (*Id.* ¶ 53.) Sometime in October 2018, Defendant Ngbodi told Plaintiff that she had not requested a consultation because "she believed that the central office in Albany would not approve his hip replacement surgery and she was not going to waste time by putting in a request." (*Id.* ¶ 54.) When Plaintiff saw her again in early November 2018, she informed him that she was not going to make the request for the same reason. (*Id.* ¶ 55.) She prescribed Plaintiff with 400 mg of ibuprofen, but Plaintiff asserts this did not alleviate his pain. (*Id.*)

3

On or about November 18, 2019, Plaintiff filed another IGRC grievance recounting the past 18-months while at Fishkill. (*Id.* ¶ 58.) Plaintiff specifically mentioned Defendant Ngbodi's alleged failures to refer him to a consultation with an orthopedist despite him begging her to do so, that he was in extreme pain, and that his condition often caused him to fall out of his bed. (*Id.* ¶ 58.) On or about December 3, 2019, Defendant Akinyombo responded that Plaintiff had been scheduled to see an orthopedic in the near future. (*Id.* ¶ 59.) On or about December 10, 2019, Plaintiff saw Dr. Schwartz, an orthopedic surgeon at Mount Vernon Hospital, who noted that Plaintiff's severe hip pain began approximately a year and a half earlier and had become more severe. (*Id.* ¶ 60.) Dr. Schwartz referred him to another orthopedist, Dr. Jonathan Holder, who recommended that Plaintiff be scheduled for total hip replacement surgery. (*Id.* ¶ 61.) On or about January 15, 2020, Plaintiff appeared for his scheduled surgery and waited in the facility dorm but was never called. (*Id.* ¶ 62.) Following this, Plaintiff, over the course of a month, went twice to sick call complaining about the severe pain he was experiencing. (*Id.* ¶¶ 63–64.)

On or about March 18, 2020, Plaintiff submitted another grievance regarding his pain and missed surgeries, "which multiple professionals deemed necessary for treating his severe pain." (*Id.* ¶ 66.) Defendant Akinyombo submitted a memo to the IGRC that Plaintiff's priority level has been raised and that his surgeries would be "scheduled in the nearest future." (*Id.* ¶ 67.) On or about May 1, 2020, Plaintiff appealed the IGRC's denial of his grievance, describing the medical staff's failures to provide him with adequate medical care over the past two years. (*Id.* ¶ 70.) He asserted his belief that the Fishkill medical staff were delaying the procedure until his meeting with the parole board in November 2020. (*Id.*) Plaintiff then spoke to Defendant Akinyombo on or about May 29, 2020, expressing his extreme pain. (*Id.* ¶ 71.) Defendant Akinyombo informed Plaintiff that his priority level was raised and stated that he might be relocated from the A/C center

4

to the main building at the front facility. (*Id.*)  Plaintiff asked why he would be moved to the last building, since it would be further from the Regional Medical Unit ("RMU"), the law library, and the commissary. (*Id.* ¶ 72.) Plaintiff showed his medical pass that stated his physical limitations and that if he was moved, it would cause more hardship for his painful condition. (*Id.* ¶ 73.) Defendant Akinyombo allegedly replied, "[w]e will see." (*Id.*)

In June 2020, the temporary pandemic-related lockdown was lifted, and inmates were allowed to travel to medical facilities for knee, hip, and back surgeries. (*Id.* ¶ 75.) On or about July 14, 2020, Plaintiff tested positive for COVID-19 and was quarantined. (*Id.* ¶ 76.) After quarantine, he learned that his cell had been relocated from cell 21A in the building to the L unit, which was even further away from his previous cell in Fishkill. (*Id.* ¶ 77.) Plaintiff wrote to Defendant Akinyombo about the relocation. (*Id.* ¶ 78.)  A prison officer came to Plaintiff and told him to pack up his belongings because he was being moved downstairs to the J gallery in building 21A. (*Id.* ¶ 79.) The J gallery would require Plaintiff to walk long corridors with multiple twists and turns. (*Id.* ¶ 81.) Plaintiff informed Defendant Akinyombo that this would exacerbate his injuries and felt like he would have to "walk[] a mile and a half to the RMU, law library, and commissary," and it required him to walk uphill. (*Id.* ¶¶ 80, 82.) By being moved to the J gallery, Plaintiff was required to walk approximately 30 minutes, despite his medical pass limited him to ten minutes of walking. (*Id.* ¶ 80.)

About a month later, Plaintiff wrote to Defendant Akinyombo inquiring about being relocated in accordance with his medical pass. (*Id.* ¶ 84.) Plaintiff wrote to Defendant two more times inquiring about the scheduling of his hip replacement surgery, but he received no response. (*Id.* ¶¶ 85–86.) When Plaintiff saw Defendant Akinyombo on his rounds days after his last letter, Plaintiff inquired about the same issue—the scheduling of his hip replacement. (*Id.* ¶ 87.)

Defendant Akinyombo responded that "they were still waiting on Dr. Holder's availability." (*Id.* ¶ 87.) Plaintiff asked why he was not sent to another facility "with better access to a surgeon given his authority over inmate health." (*Id.* ¶ 88.) Defendant Akinyombo responded by asking when Plaintiff's parole would be, and when Plaintiff informed him November 2020, Defendant Akinyombo allegedly responded: "Good. We don't have to send you out; you could have surgery when you get out."[2] (*Id.*)

Plaintiff's parole was eventually granted in November 2020, and he was set to be released in March 2021. (*Id.* ¶ 92.) On February 10, 2021, Plaintiff was admitted to the infirmary in preparation for his surgery at Mount Vernon Hospital, which was scheduled for the next day. (*Id.* ¶ 97.) Plaintiff's hemoglobin levels were too low, resulting in an emergency blood transfusion. (*Id.* ¶¶ 98–99.) While the blood transfusion brought Plaintiff's hemoglobin levels up, his levels were determined to be too low for surgery. (*Id.* ¶ 100.) Plaintiff remained in the hospital for two weeks to raise his levels, but it was still too low for surgery. (*Id.*) He was then discharged on or about February 25, 2021, without receiving his hip replacement. (*Id.* ¶ 102.)

Plaintiff was released from Fishkill on or about March 23, 2021, and sought a surgeon. (*Id.* ¶ 103.) Plaintiff underwent surgery on April 20, 2021, with Dr. Tyler Lucas at Metropolitan Hospital. (*Id.* ¶ 104.) Plaintiff alleges that despite his hip replacement being performed correctly, he still experiences a constant ache in his left hip, which he attributes to the unnecessary three-year delay. (*Id.* ¶ 105.) Plaintiff also alleges that the untimeliness of his surgery has resulted in difficulty walking steadily and straight. (*Id.*)

---

[2] Plaintiff asserts in the 5AC that another inmate overheard this conversation. (5AC ¶ 88.)

6

## PROCEDURAL HISTORY

On January 29, 2021, Plaintiff commenced this action. (ECF No. 2.) The Court has previously (1) granted Defendants' motion to dismiss Plaintiff's Second Amended Complaint and (2) granted in part and denied in part Defendants' motion to dismiss Plaintiff's Third Amended Complaint. (ECF Nos. 35, 60.) Now before the Court is Defendants' motion to dismiss the 5AC. (ECF No. 102.) Plaintiff opposed the motion. (ECF No. 104.) Defendants filed a reply memorandum in further support of their motion. (ECF No. 105.)

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable

7

to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.    Section 1983 Claims

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's action, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution").

**DISCUSSION**

Pursuant to Section 1983, Plaintiff alleges that Defendants violated his First and Eight Amendment Rights. (ECF No. 104, "Pl. Opp.") Defendants move to dismiss the 5AC pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing that (1) Plaintiff's First Amendment retaliation arguments are time-barred; (2) Plaintiff fails to sufficiently plead an Eighth Amendment deliberate indifference to medical needs claim; and (3) Defendants are entitled to qualified immunity. (ECF No. 103, "Defs. Mot.," at 8, 10, 18.)  The Court addresses each claim in turn.

## I. Threshold Matters

### a. Eleventh Amendment

Defendants are being sued in their official and individual capacities. (5AC ¶ 22.) The Eleventh Amendment bars suits in federal court for money damages against a state or its agencies, unless the state has waived its immunity, or Congress has explicitly and constitutionally abrogated the state's immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). Because a suit against a state officer in his official capacity is deemed to be a suit against the state, the Eleventh Amendment bars such a claim as well. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). Whereas, official capacity claims are barred, state officials sued in their individual capacities are "persons" within the meaning of § 1983 and are not barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21 (1991) ("officers sued in their personal capacity come to the court as individuals and thus fit comfortably within the statutory term 'person.'"); *see also Will*, 491 U.S. at 58 (1989).

New York has not waived its immunity for official-capacity Section 1983 claims. *See Will*, 491 U.S. at 65.  Nor has Congress abrogated state immunity in Section 1983 actions. *Id*. at 66.

9

Plaintiff thus may not sue Defendants in their official capacities. However, Plaintiff may proceed on his Eighth and First Amendment claims against Defendants in their individual capacities.

### b. Statute of Limitations

As a threshold matter, Defendants argue that Plaintiff's 5AC must be dismissed on statute of limitations grounds because the 5AC "pleads new allegations and claims a new cause of action against Defendant Akinyombo." (Def. Mot. at 1, 8–10.) More specifically, Defendants argue that Plaintiff's First Amendment retaliation claim was only introduced in Plaintiff's opposition and is therefore time-barred. (ECF No. 105, "Defs. Reply," at 7.)

Dismissal on statute of limitations grounds may be granted only when it is clear from the complaint that the claim is untimely. *See Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("[I]n the statute of limitations context… dismissal is appropriate only if a complaint clearly shows the claim is out of time."); *Omollo v. Citibank*, 2008 WL 1966721, at *3 (S.D.N.Y. May 6, 2008). Federal Rule of Civil Procedure 15(c) governs the relation back of amendments to a pleading. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). Under Rule 15(c)(1)(B), an amended complaint "relates back" to the prior complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out… in the original pleading… ." Fed. R. Civ. P. 15(c)(1)(B). "The central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *See Slayton v. Am. Exp. Co.,* 460 F.3d 215, 228 (2d Cir. 2006).

In the instant matter, the 5AC now asserts that Defendants retaliated against Plaintiff for filing grievances concerning the lack of medical treatment he received for his hip conditions in violation of the First Amendment. (5AC ¶ 114.) Plaintiff asserts that his retaliation claim relates

back because it alleges the same theory of his initial Complaint, namely, that Defendants failed to provide Plaintiff medical treatment. (Pl. Opp. at 13.)  For instance, Plaintiff alleges in his initial Complaint that the nature of this lawsuit was for the "deliberate, intentional and continuous delay of medical treatment to [his] hip and total disregard for the constant pain and suffering plaintiff [was] experiencing." (Compl. § IV.)  The initial Complaint also includes Plaintiff's grievances to Defendants, such as when he "inquir[ed] about [his hip] surgery and what… doctors [were] going to relieve [his] pain and ameliorate [his] condition." (*Id*. at Addendum, p. 6.)  Moreover, the 5AC appears to be much more detailed than Plaintiff's previous pleadings because he now has legal representation as opposed to proceeding as a *pro se* litigant. The Court therefore finds that Plaintiff's First Amendment retaliation claim relates back to his initial Complaint and is not time-barred.

## II.    Eight Amendment Claim

Defendants next move to dismiss Plaintiff's Eight Amendment claims, asserting that Plaintiff fails to satisfy the objective and subjective prongs of a deliberate indifference claim. (Defs. Mot. at 10.) In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment[,]… whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." 429 U.S. 97, 104–05 (1976) (citation and footnote omitted). The standard for an Eighth Amendment claim contemplates whether a medical condition is "sufficiently serious." *Rivera v. Johnson*, 1996 WL 549336, at *2 (W.D.N.Y. Sept. 20, 1996). This occurs when Plaintiff's health "present[s] a condition of urgency of the type that may produce death, degeneration or extreme pain which correspondingly merits constitutional protection." *Id*. The

11

Second Circuit has considered various factors when deciding whether a medical condition is "sufficiently serious," such as "chronic and substantial pain or the presence of a medical condition that significantly affects an individual's daily activities." *Salgado v. DuBois*, 2019 WL 1409808, at *5 (S.D.N.Y. Mar. 28, 2019). Additionally, "[s]erious physical pain over an extended period of time… may be sufficiently serious where medical care has been deprived." *Louis v. Morley*, 2024 WL 4573677, at *4 (S.D.N.Y. Oct. 24, 2024) (quoting *Jahad v. Holder*, 2021 WL 3855445, at *6 (S.D.N.Y. Aug. 26, 2021)). Other circuits have considered factors associated with unnecessary and wanton infliction of pain to include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992); *accord Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (citing *McGuckin* and collecting cases from other circuits employing a similar standard).

For a plaintiff to state an Eighth Amendment deliberate indifference claim, an objective and subjective analysis must be satisfied. *McFadden v. Keyser*, 2025 WL 846371, at *3 (S.D.N.Y. Mar. 18, 2025). In showing deliberate indifference to medical needs, the objective analysis requires that the plaintiff show a sufficiently serious deprivation was caused. *Id.* Plaintiff must specifically demonstrate that he suffered from an objectively serious medical condition "which the defendants knew of and deliberately disregarded." *Green v. Senkowski*, 100 F. App'x 45, 46 (2d Cir. 2004). A serious medical condition "is one that may result in death, degeneration, or chronic and substantial pain." *Id.* (internal quotations omitted). The subjective analysis to show deliberate indifference to medical need requires a plaintiff to show that a defendant acted with a culpable

mindset, in which they intentionally deny care and/or disregard known threat(s) to plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994).

### a. Objective Standard

Beginning with the objective analysis, Plaintiff has demonstrated that he suffered from an objectively serious medical condition, which Defendants knew of and deliberately disregarded. The 5AC provides a detailed timeline of Plaintiff seeking medical treatment for his hip conditions from both Defendants. During Plaintiff's incarceration, he inquired about receiving medical treatment several times and expressed the severity of his hip pain over the course of two years. (*see generally* 5AC.) Plaintiff was informed by several doctors that he had osteoarthritis which resulted in severe hip pain. (*Id.* ¶¶ 51, 60–61.) Plaintiff was also informed by two of these doctors that he required a total hip replacement. (*Id.* ¶¶ 51, 61.) Despite Defendant Ngbodi agreeing that Plaintiff suffered from osteoarthritis and required a hip replacement, she nevertheless failed to schedule a consultation with an orthopedic surgeon. (*Id.* ¶¶ 54–55.)

Similarly, Defendant Akinyombo was aware of Plaintiff's hip condition because he "was responsible for investigating and responding to patient concerns at Fishkill." (*Id.* ¶ 65.) Within this role, he had received and responded to several of Plaintiff's several grievance letters regarding the pain he was in and inquired about his hip surgery. (*Id.* ¶¶ 47–48, 58–59.) For instance, Defendant Akinyombo informed Plaintiff "he had raised the priority level" for Plaintiff's surgery and that it would be "scheduled in the nearest future." (*Id.* ¶ 67.) Although priority was allegedly raised, Plaintiff asked Defendant Akinyombo why he was not transferred "to another facility with better access to a surgeon given his authority over inmate health." (*Id.* ¶ 88.) As described in more detail below, in response to that question, Defendant Akinyombo inquired about Plaintiff's scheduled parole and recognized that it was scheduled in a few months. (*Id.*) Defendant Akinyombo then

13

informed Plaintiff he could get the surgery when he "get[s] out," indicating that Defendant Akinyombo deliberately disregarded Plaintiff's necessary medical treatment. (*Id.*) Further, based on the allegations, it can also be said that Defendant Akinyombo deliberately disregarded Plaintiff's medical needs when he would often walk away from Plaintiff saying, "I've got to go." (*Id.* ¶ 65.)

### b. Subjective Standard

As for the subjective analysis, Plaintiff also sufficiently pleads that Defendants acted with a culpable mindset, in which they intentionally denied care and disregarded known threats to Plaintiff's health and safety. Defendant Ngbodi was aware that Plaintiff was diagnosed with anemia due to his low hemoglobin levels, but did not take any steps to address this condition. (*Id.* ¶ 57.) Defendant Ngbodi's failure to treat Plaintiff's anemia eventually resulted in an emergency blood transfusion and two weeks in the hospital with the hopes that Plaintiff's levels would rise so that he could undergo his hip replacement procedure. (*Id.* ¶ 99.) Plaintiff, however, was not successful in raising his hemoglobin levels and failed to timely receive his hip replacement. (*Id.* ¶¶ 100, 102.) Furthermore, based on Plaintiff's allegations, Defendant Ngbodi intentionally denied care to Plaintiff when she did not request an orthopedic specialist despite Plaintiff constantly seeking her and other prison officers' help for his extreme pain. (*Id.* ¶¶ 54–56.)

Defendant Akinyombo was similarly aware of Plaintiff's medical pass,[3] which informed prison officials of the physical limitations specified therein. (*Id.* ¶ 73.) And yet, Defendant Akinyombo relocated the Plaintiff twice in the facility; both locations went against the physical limitations specified in the medical pass. (*Id.* ¶¶ 77, 79.) Based on the allegations, Defendant

---

[3] For instance, the 5AC alleges that Plaintiff "showed Defendant Akinyombo his medical pass, which read: 'No work, no stair climbing, must be housed on the flats, no prolonged walking (longer than 10 minutes), no lifting over 1-15 lbs., may need help lifting 7.15 lbs or more, hearing aid/cane/back brace, no work on ladder or heights, no work for food services, no yard, may watch T.V., medical reason-physical reason.'" (5AC ¶ 73.)

Akinyombo had a culpable mindset by continuously delaying Plaintiff's hip replacement when asking Plaintiff when he was up for parole. (*Id.* ¶ 88.) Notably, when Defendant Akinyombo learned that Plaintiff was only a few months away from parole, he allegedly informed Plaintiff that "[w]e don't have to send you out; you could have surgery when you get out." (*Id.*)

Accordingly, because Plaintiff sufficiently pleads the objective and subjective components of an Eight Amendment deliberate indifference claim, Defendants' motion to dismiss these claims are denied.

## III.   First Amendment Retaliation Claim

The Court now considers whether Plaintiff has stated a retaliation claim under the First Amendment against Defendant Akinyombo. Incarcerated persons do not enjoy the full constitutional rights that non-incarcerated individuals do. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.") (internal quotation marks omitted). "[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320

15

F.3d 346, 352 (2d Cir. 2003)). Thus, courts require that such claims be "supported by specific and detailed factual allegations," rather than "in wholly conclusory terms." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

As an initial matter, Plaintiff has demonstrated that his speech was protected. *See Walker v. Senecal*, 130 F.4th 291 (2d Cir. 2025) ("The parties do not dispute that [plaintiff's] allegations meet the first requirement because the filing of a lawsuit or a grievance is protected conduct.") Plaintiff next alleges that Defendant Akinyombo relocated Plaintiff on two different occasions after filing grievances. (5AC ¶¶ 74–77.) According to Plaintiff, these relocations were adverse because his new cells were "farther from the RMU, the law library, and commissary." (*Id*. ¶ 72.) This was problematic for Plaintiff because "he could barely walk, even with the assistance of a cane." (*Id*. ¶ 73.) Additionally, his medical pass specifically limited him to walking for no longer than ten minutes, prohibited the use of stairs or climbing, and required that he be housed on the flats. (*Id.*) The Court thus finds that Defendants took adverse action against Plaintiff.

Finally, the Court determines that there was a causal connection between Plaintiff's protected speech and the adverse action. For instance, on or about May 29, 2020, Defendant Akinyombo informed Plaintiff that he might be relocated after Plaintiff inquired about his hip replacement procedure. (*Id*. ¶ 71.) Despite Plaintiff presenting his medical pass, and protesting that being relocated would result in hardship, Defendant Akinyombo allegedly ignored Plaintiff's concerns. (*Id*. ¶¶ 72–73.) Another example occurred on June 16, 2020, when Plaintiff once again inquired about his hip replacement procedure. (*Id*. ¶ 74.) One month later, on July 25, 2020, after Defendant was released from his COVID-19 quarantine, he was again moved to a different cell. (*Id*. ¶ 77.) Shortly thereafter, Plaintiff wrote to Defendant Akinyombo asking why he was relocated

and that such a transfer was in violation of his medical pass. (*Id*. ¶ 78.) Two days later, Plaintiff was relocated to a different cell, which now required him to walk "down long corridors with multiple twists and turns, and to walk down several long hallways just to get out of the building." (*Id*. ¶¶ 80–81.) In addition, the RMU, law library, and commissary were now uphill for Plaintiff. (*Id*. ¶ 82.) Again, a violation of his medical pass, which Defendant Akinyombo was aware of. (*Id*.) The Court thus finds that Plaintiff sufficiently pleads specific and detailed allegations demonstrating a plausible causal connection between Defendant Akinyombo's adverse action and Plaintiff's protected speech.

Accordingly, Plaintiff has successfully pled a First Amendment retaliation claim against Defendant Akinyombo. The motion to dismiss this claim is denied.

## IV.    Qualified Immunity

Finally, Defendants assert that Plaintiff's claims should be dismissed because they are entitled to qualified immunity. (Defs. Mot. at 18.) "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also, e.g.*, *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lore v. City of Syracuse*, 670 F.3d 127, 162 (2d Cir.2012) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Accordingly, for an action to lie, "existing precedent must have placed the statutory or constitutional question beyond debate." *Taylor*, 575 U.S. at 825 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "This exacting standard 'gives

government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 575 U.S. at 611 (quoting *al-Kidd*, 563 U.S. at 743) (alteration in original).

Significant here, Defendants pursue qualified immunity on a motion to dismiss. "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004). "[P]laintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* "[T]he motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* (quoting *Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1494 (2d Cir.1992)). Defendants therefore face a "formidable hurdle." *Id*. at 434.

Qualified immunity is not appropriate at this stage because it was clearly established at the time of the alleged violations that prison officials may not act with deliberate indifference towards a prisoner's medical needs. *See Bradway v. Town of Southampton*, 826 F. Supp. 2d 458, 475 (E.D.N.Y. 2011) (citing *Estelle*, 429 U.S. at 104–05 and *Kaminsky v. Rosenblum*, 929 F.2d 922, 926 (2d Cir. 1991)) ("First, it is axiomatic that the right that [P]laintiff[s] assert[]—namely, [his] right under the [Eighth] Amendment to be free from cruel and unusual punishment as a result of a deliberate indifference to serious medical needs—is clearly established.") It was also clearly established that prison officials cannot retaliate against a prisoner's First Amendment right. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments.") As discussed above, the Court believes that Plaintiff

sufficiently pleads violations of the First and Eight Amendment. Accordingly, at this juncture, Defendants are not entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, the Court determines Plaintiff has plausibly and properly alleged claims for deliberate indifference to serious medical needs and retaliation. Accordingly, Defendants' motion to dismiss Plaintiff's Complaint is DENIED. Plaintiff's claims, however, asserted against Defendants in their official capacity are DISMISSED, as barred by the Eleventh Amendment. Defendants are directed to file an answer by January 12, 2026.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 102.

SO ORDERED,

Dated: December 10, 2025
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.